UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRACY SISSON,<br><br>                     Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>                     Defendant. | Case No. 3:09-cv-05738-RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for January 14, 2011 |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for child's insurance, disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On September 15, 2005, plaintiff filed applications for child's and disability insurance

REPORT AND RECOMMENDATION - 1

benefits, as well as an application for SSI benefits, alleging disability as of April 12, 2005, due to a heart condition, learning disabilities, difficulties with reading and spelling, tremors making it hard for her to write and to lift and carry things, and fatigue and weakness. See Tr. 10, 56, 104-05.  Her applications were denied upon initial review and on reconsideration. See Tr. 10, 47, 51, 305, 310.  A hearing was held before an administrative law judge ("ALJ") on June 6, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 329-51.

On July 20, 2007, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 10-21.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 30, 2009, making the ALJ's decision the Commissioner's final decision. See Tr. 3; see also 20 C.F.R. § 404.981, § 416.1481.  On November 25, 2009, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See (ECF #1-#3). The administrative record was filed with the Court on February 16, 2010. See (ECF #8).  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) evaluating the medical and other non-medical evidence in the record; (2) assessing plaintiff's credibility; (3) evaluating the lay witness evidence in the record; (4) assessing plaintiff's residual functional capacity; and (5) finding her to be capable both of returning to her past relevant work and of performing other work existing in significant numbers in the national economy.  For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the Court affirm

REPORT AND RECOMMENDATION - 2

the ALJ's decision.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

REPORT AND RECOMMENDATION - 3

"must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may

REPORT AND RECOMMENDATION - 4

constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.  Plaintiff's Cerebral Palsy

Plaintiff argues the ALJ erred in finding she had a "severe" impairment consisting of a "history" of cerebral palsy, noting that she has been diagnosed with cerebral palsy, rather than just a history thereof.[1] Tr. 13; see, e.g., Tr. 158. However, any error on the part of the ALJ here was harmless. This is because regardless of how the ALJ actually described that condition, he then went on to discuss the pertinent medical evidence in the record with respect thereto. See Tr. 16-20; Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion). In other words, plaintiff has not explained how any such mislabeling the ALJ committed here in fact prejudiced her.

B.  Dr Duckworth

Plaintiff next challenges the ALJ's evaluation of the following medical source opinion:

> The record contains a physical evaluation report dated January 2006 and completed by a physician's assistant, and signed by Dr. G.W. Duckworth, M.D., in support of the claimant's application for assistance from the State of Washington Department of Social & Health Services, and assessing the claimant as restricted to sedentary exertion based upon cerebral palsy. However, such assessment is entitled to limited weight because it is not consistent with other evidence in the record regarding the claimant's level of function, including the exam findings by Dr. [Leo W.] Kesting[, M.D.,] who noted the claimant as [sic] able to walk with a normal gait, and with the wide range of the claimant's activities of daily living which include attending school, working part-time, snowboarding and hiking. [Exhibit 4F]

---

[1] At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).

REPORT AND RECOMMENDATION - 5

Tr. 17. Plaintiff argues these are not legitimate reasons for rejecting Dr. Duckworth's opinion, because she testified at the hearing that her level of functioning varied from day-to-day, and on the day Dr. Kesting evaluated her she was doing somewhat better. But given that, as discussed in greater detail below, the ALJ did not err in discounting plaintiff's credibility, he did not have to adopt her version of how she functioned in general. There also is nothing remiss in the ALJ's decision here to discount the opinion of an examining physician because it conflicted with the objective medical findings of a treating physician. See Lester, 81 F.3d at 830 (more weight given to treating physician's opinion than to opinions of those who do not treat); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where medical opinion is based on independent clinical findings, ALJ may disregard conflicting opinion in another physician's diagnosis).

Also as discussed in greater detail below, furthermore, the ability to engage in activities of daily living such as attending school – even though perhaps not full-time – and, in particular, working part-time, snowboarding and hiking, do call into question not only plaintiff's allegations of disability, but a limitation to only sedentary work as found by Dr. Duckworth.[2] See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that other evidence of ability to function, including reported activities of daily living, contradicted that conclusion); Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989) (finding ALJ properly rejected physician's opinion in part on basis that it conflicted with both other medical evidence

---

[2] Plaintiff also asserts error here on the basis that the ALJ should have questioned her about her snowboarding and hiking. But plaintiff fails to explain why the ALJ was required to do so. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record triggered only when there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence). In other words, plaintiff has not shown that the evidence in the record on this issue was so ambiguous or that the record was so inadequate so as to prevent the ALJ from being able to reach a proper decision on the issue.

REPORT AND RECOMMENDATION - 6

in record and plaintiff's own subjective pain complaints).

    C.    Dr. Wheeler

Plaintiff also argues the ALJ erred in making the following findings:

> The claimant's educational records indicate that she primarily earned A's and B's in her subjects in high school in 2002, 2003, 2004 and 2005, and that the 2005 school year she earned only A's and B's in subjects including math, English, and Global Study, and that as of December 2005 her cumulative GPA was 3.396. School IEP records, dated January 2005, further indicated that the claimant had been living on her own for the past year and as a result, had become more mature and responsible for her own education. [Exhibit 1F] Yet, in January 2006, Dr. Kimberly Wheeler, Ph.D., completed a State of Washington Department of Health & Social Services form by checking boxes for chronic mental impairment due to borderline intellectual functioning and learning disorder (reading, written expression) and generally rating restrictions in social functioning and cognition as moderate to marked, in support of the claimant's claim for public assistance. Such assessment is entitled to limited weight because it was not made under the standard for disability as defined by the Social Security Act and its regulations, and also because it is not consistent with the medical and other evidence in the record with regard to the claimant's level of function. In addition, Dr. Wheeler's own exam notes indicate that the claimant was cooperative, that she had either mild or no restrictions with respect to her ability to carry [sic] activities of daily living including cooking/shopping, household chores, driving and financial management. [Exhibit 5F]

Tr. 17-18. The undersigned agrees that the fact that the form used by Dr. Wheeler to assess the mental functional capacity of plaintiff "was not made under the standard for disability as defined by the Social Security Act and its regulations," is not a legitimate reason for rejecting it, because it fairly clearly describes the levels of limitation contained therein (see Tr. 161-64) – making the findings contained therein relevant to evaluating plaintiff's functioning – and because defendant often has relied on such assessments in determining a claimant's disability status.

    On the other hand, the undersigned finds the ALJ did not err in giving limited weight to Dr. Wheeler's findings, due to its inconsistency both with the medical and other evidence in the record overall and with her own clinical notes. See Tr. 162, 165-67; see also Batson, 359 F.3d at

REPORT AND RECOMMENDATION - 7

1195 (ALJ need not accept opinion of treating physician if inadequately supported by clinical findings or inconsistent with record as whole); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical opinion source's assessment and his or her clinical notes, recorded observations and other comments regarding claimant's capabilities constitutes clear and convincing reason for not relying on thereon); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989). That some of Dr. Wheeler's other notes may have indicated the existence of some more significant issues does not take away from the ALJ's overall determination here, given that most of those other "notes" appear largely either to be based on plaintiff's own subjective complaints or consist of Dr. Wheeler's stated conclusions, rather than actual clinical findings.

A physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; see also Morgan, 169 F.3d at 601 (opinion of physician premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where they have been properly discounted). While the ALJ did not reject Dr. Wheeler's opinion on this basis, plaintiff also cannot argue such subjectively-based evaluation notes are sufficient to overcome the generally benign objective clinical findings contained elsewhere on the assessment form Dr. Wheeler completed.

The ALJ further did not err in discounting Dr. Wheeler's opinion because it conflicted with other evidence in the record indicating plaintiff performed relatively well in school, despite her learning disorders and other impairments. Plaintiff argues there is evidence in the record that calls into question the legitimacy of that performance. But while the record does show plaintiff had difficulties, there also is evidence, as noted by the ALJ, that she was able to progress and do relatively well given her impairments, including being able to graduate from high school. See Tr.

REPORT AND RECOMMENDATION - 8

133, 152, 173A, 218-19, 222, 225-29, 239, 247, 263.  In any event, as noted above, it is the ALJ who solely is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence, and where such questions exist, the ALJ's conclusions must be upheld.  See Morgan, 169 F.3d at 601; Reddick, 157 F.3d at 722; Sample, 694 F.2d at 642.  Because the evidence in the record is sufficient to support the ALJ's interpretation of any such ambiguities and conflicts here, those conclusions should be upheld.

D. Dr. Mayers

Immediately following his evaluation of Dr. Wheeler's opinion, the ALJ went on to find in relevant part that:

> Upon subsequent consultative psychological evaluation in February 2006, Dr. Kathleen Mayers, Ph.D., diagnosed a disorder of written expression and a reading disorder, with a "fairly good" prognosis.  The claimant was alert and oriented to person, place and time.  According to Dr. Mayers, the claimant spoke in a simplified but generally logical and goal directed manner at a moderate rate and rhythm, and she expressed herself fairly well at times.  She was able to perform serial 7's with only the last number (after 5 numbers) being incorrect, was able to recall 3 out of 3 numbers immediately and 2 out of 3 numbers after a 5-minute delay, and was able to perform two different 3-step tasks.  She displayed difficulty with spelling and reading, consistent with a learning disorder.  She exhibited poor auditory memory, but was much better in the area of visual memory capabilities and her concentration was within normal range.  She earned WAIS scores in the overall borderline to average range; her performance IQ was 91, her verbal IQ measured 77 and her full scale IQ score was 82.  Dr. Mayers also noted the claimant's judgment appeared to be fair, and that her social skills seemed to be fair to good.  The claimant told Dr. Mayers that she was living with her boyfriend, that they took turns doing the cooking and typically watched movies in the evening, and that she also spent her time visiting friends, snowboarding with her boyfriend, and watching television.  Dr. Mayers further reported that, the claimant "is motivated to work and has found work in the area of housekeeping, although she is working part-time [spending about six hours a day on her job].  In view of her extremely low-level auditory memory capabilities, it is to her credit that she has been able to maintain this employment." [Exhibit 5F, 6F]

Tr. 18.

Plaintiff argues the ALJ erred in failing to fully credit the findings Dr. Mayers obtained.

REPORT AND RECOMMENDATION - 9

But, again, the undersigned finds no error here. First, the fact that plaintiff had the IQ scores she did and had low memory index scores alone is insufficient to show she suffered from significant work-related limitations. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability"). Nor does plaintiff explain how the fact that Dr. Mayers commented that she was motivated to work, that she had found part-time work as a housekeeper and that it was to her credit that she could maintain that job despite those memory scores is evidence thereof. Rather, it supports a finding to the contrary.

Lastly, while Dr. Mayers did state plaintiff's "ability to adapt to a work-like setting" was "decreased by her borderline intellectual skills, her spelling disorder and her memory problems," no indication was given as to exactly what extent that ability was decreased. Tr. 175. Indeed, Dr. Mayers also stated that plaintiff's concentration and prognosis were both "fairly good," that her pace was "average to brisk," that her persistence was "good", and that, as plaintiff herself admits, she was "clearly highly motivated to work." Tr. 175, 177. The decreased ability to adapt found by Dr. Mayers, to the extent it does conflict with the ALJ's findings regarding plaintiff's residual functional capacity, is not alone a valid basis to find the ALJ erred here.

E.    Dr. Bremer

Continuing his evaluation of the medical evidence in the record, the ALJ next found in relevant part as follows:

> Following a consultative psychological examination in March 2007, Dr. Jeff Bremer, Ph.D., described the claimant as a "socially appropriate, emotionally stable, pregnant, married 19-year old woman of average intelligence with fairly severe Learning Disabilities in Reading and Writing, slight dysarthria, and mild difficulty retaining information (regardless of how it is presented to her). Not surprisingly, she benefits from some extra time to practice what she has been shown, or some repetition of verbal instructions." She earned . . . scores of 89 full scale, 85 verbal and 95 performance IQ's. . . . [S]he earned reading scores of 1.8 grade level and spelling at the 1.0 grade level. Dr. Bremer diagnosed a reading disorder, a disorder of written expression and

REPORT AND RECOMMENDATION - 10

> phonological disorder, mild.  Although Dr. Bremer considered the claimant to be unable to complete paperwork, even his own report acknowledged that she was taking a math class and participating in a literacy program for one-one help with reading twice a week.  When asked, the claimant denied having any mental health care, and denied having any emotional or mental problems.  Dr. Bremer observed that she displayed a "persistent, slight upper body tremor" with shaking of her hands and jerky neck and hand movements, which caused her writing to be shaky or tremulous.  Nevertheless, the claimant stated that [sic] liked to engage in outdoor activities including hunting and fishing, and that around the house she did most of the dishes, cooking and laundry and other housework because her husband was working.  Dr. Bremer further reported that the claimant also readily understood and followed at least simple instructions, and worked steadily on testing, with good attention and concentration.  He noted that she was "mildly" dysarthric, speaking slowly with a mild staccato, with practiced effort to slow down and enunciate, but he further noted that she was nonetheless "100 percent understandable."  He rated her [global assessment of functioning ("]GAF["]) score] as high at 70.[3]
> [Exhibit 13F]

Tr. 18.

Plaintiff argues the ALJ failed to fully credit Dr. Bremer's opinion, arguing specifically that her performance in school was not a valid reason for rejecting Dr. Bremer's finding that she read and spelled at a first grade level.  Plaintiff further argues the ALJ erred in not specifically mentioning Dr. Bremer's findings regarding her low memory scores or his statement that she was "functionally illiterate (with regard to reading and writing) and, therefore, entirely dependent upon others to complete any paperwork." Tr. 267.  As noted above, though, it was not improper for the ALJ to interpret the evidence in the record overall as indicating a greater academic ability than either plaintiff has alleged and some medical sources have found, including Dr. Mayers and Dr. Bremer.  That is, the ALJ appropriately determined that such evidence was inconsistent with Dr. Bremer's findings concerning plaintiff's reading and spelling. See Batson, 359 F.3d at 1195;

---

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 61-70 reflects mild symptoms or "some difficulty" in those areas, but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994)).

REPORT AND RECOMMENDATION - 11

Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149.

In addition, as discussed above with respect to Dr. Mayers, low memory scores alone are insufficient in themselves to establish the existence of significant or disabling limitations. Also, as expressly pointed out by the ALJ, plaintiff reported at the time engaging in outdoor activities, including hunting and fishing, and doing most of the housework. See Morgan , 160 F.3d at 601-02 (9th Cir. 1999) (proper to reject physician's opinion in part on basis that reported activities of daily living contradicted that opinion); see also Magallanes, 881 F.2d at 754. Even considering the low memory scores, furthermore, the ALJ noted as well that Dr. Bremer found plaintiff could "readily" understand and follow "at least simple instructions," "worked steadily on testing, with good attention and concentration," and "rated her GAF [score] as high at 70." Tr. 18, 264, 267. The ALJ, therefore, did not err in failing to mention or to adopt certain of Dr. Bremer's other specific findings plaintiff asserts are indicative of greater mental functional limitations than those found by the ALJ.

    F.   <u>Dr. Kesting and Dr. Bowns</u>

Plaintiff assigns error to the ALJ's statement in his decision that Dr. Kesting reported she was unable to spell the words "world" or "horse" backwards, whereas Dr. Kesting actually found she was unable to spell those words forwards. See Tr. 16, 152-53. Be that as it may, any error in this regard on the part of the ALJ was entirely harmless, as again this evidence does not establish the existence of any greater mental functional limitations than the ALJ found especially given, as discussed above, the ALJ's proper evaluation of the evidence in the record concerning the ability of plaintiff to perform academically. Lastly, plaintiff argues the ALJ erred in failing to discuss the opinion evidence in the record from school officials, including a school psychologist, finding she had neurological difficulties in several areas and an inflated GPA score affected by resource

REPORT AND RECOMMENDATION - 12

classes, as well as highly adapted and modified mainstream coursework and grading procedures. See Tr. 124, 128, 132. Again, however, the issue of plaintiff's academic performance and the ALJ's evaluation thereof has been addressed, and the mere existence of neurological difficulties is not sufficient to establish specific work-related limitations.

II.     The ALJ's Evaluation of the Other Non-Medical Source Evidence in the Record

Plaintiff argues the ALJ erred in failing to properly consider the following statement from one of her teachers:

> Tracy has a long established diagnosis of cerebellar dysfunction which is presumably secondary to birth anoxia and encephalopathy. This condition is static but has significant sequelae inclusive of organicity in intellectual functioning and motoric indices inclusive of gait, speech, and hand tremors. This health impairment has limited her strength, vitality, or alertness and has adversely affected her educational performance requiring specially designed instruction as a compensatory mechanism. . . .

Tr. 216. As pointed out by plaintiff, evidence from "other sources" may be used to "show the severity" of a claimant's impairments and their effect on his or her ability to work. 20 C.F.R. § 404.1513(d), § 416.913(d); see also Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 *3 (stating further that 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 require consideration of other source evidence when evaluating acceptable medical source opinions, such as those from licensed physicians or psychologists). This statement from plaintiff's teacher, though, sheds no more light on plaintiff's academic performance than the evidence in regard thereto addressed by the ALJ and that already has been discussed herein. Accordingly, here too, any error by the ALJ in not specifically mentioning this evidence was non-prejudicial to plaintiff and irrelevant to the ultimate disability determination, and thus harmless.

III.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

REPORT AND RECOMMENDATION - 13

642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Here, plaintiff argues the ALJ's statement that her "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms [were] not entirely credible," was not a clear and convincing reasons for discounting her credibility. Tr. 16. But plaintiff fails to point out that immediately following this statement, the ALJ went on to discuss the objective medical

REPORT AND RECOMMENDATION - 14

evidence in the record showing plaintiff's allegations were inconsistent therewith, which clearly is a valid basis on which to do so. See Tr. 16-19. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement).

As discussed above, the ALJ also has cited to evidence in the record regarding plaintiff's activities of daily living, including her part-time work, participation in outdoor activities such as snowboarding, hiking, hunting and fishing, and to her performance of the majority of household chores, as indicative of the less than disabling nature of her alleged impairments and limitations. In addition, the ALJ discussed plaintiff's daily activities in greater detail as follows:

> . . . [T]he claimant remains capable of independently engaging in a wide range of daily activity in spite of her learning disorder and her tremors. She completed high school with special education assistance, earning primarily A and B grades. And, at the time of a third-party function statement, which was completed by the claimant's friend, the claimant was living alone in an apartment. Based upon statements completed by the claimant and her friend, the claimant made her own meals, although she did so slowly when she had to read package directions; took care of her own personal hygiene and needed no reminders; spent her time hiking, watching television, shopping, visiting with her then boyfriend on a daily basis, and going to school; went out on her own and did not need anyone to accompany her; and, was able to pay her own bills, count change, handle a savings account and use a checkbook/money orders. Her testimony indicates that she is able to perform tasks such as vacuuming and sweeping, and that she does her own laundry, essentially without aggravating her shaking symptoms. She can drive, but just does not drive when her shaking is too intense. She testified that when she was working, she did not stay home because of her shakiness, but rather just took more breaks or engaged in lighter types of tasks. She testified that she can read and understand road signs while driving, that she can figure out what roads to take so when she sees the signs she can recognize them, although she sometimes has others come with her. She stated that she is able to count her change when she buys items, and that she can do addition and subtraction. She has used a computer at the University, and if she does not spell words correctly, she relies on the voice-activated computer to correct her spelling. The claimant has attended community college with the assistance from a tutor, and other programs including a two-week camp at the University of Washington for training with voice-activated computer software. The claimant's testimony and the record further indicate that the claimant has not

REPORT AND RECOMMENDATION - 15

> been terminated from any of the jobs she had held. [Exhibit 1E/23-28; 31-36; 41-42]

Tr. 19.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider the claimant's daily activities. <u>Smolen</u>, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." <u>Id.</u> at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." <u>Id.</u>

Plaintiff argues none of the activities cited by the ALJ above shows she is able to perform full-time, competitive employment without needing extra breaks. Plaintiff's argument would be more persuasive if the ALJ had found she could perform such work <u>based</u> on such activities. But it was entirely appropriate for the ALJ to cite those activities as a basis for discounting plaintiff's credibility regarding the disabling nature of her alleged impairments and limitations. That is, the activities the record shows plaintiff has engaged in indicate a far greater functional ability, which includes the jobs she performed even with the extra breaks or assistance her employers provided, than she claims to have. Accordingly, the undersigned finds the ALJ gave clear and convincing reasons for discounting plaintiff's credibility in this case.

IV.     <u>The ALJ's Evaluation of the Lay Witness Evidence in the Record</u>

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

REPORT AND RECOMMENDATION - 16

link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff argues the ALJ failed to properly consider the lay witness statement provided by her friend. See Tr. 86-94. But as just discussed in regard to the ALJ's assessment of plaintiff's credibility, the ALJ did consider that statement. See Tr. 19 (noting plaintiff and her friend both had reported that plaintiff lived alone, made her own meals, needed no reminders, spent her time hiking, watching television, shopping, visiting with her boyfriend, and going to school, went out on her own, needed no one to accompany her, and could pay her bills, count change, and handle savings account and use checkbook/money orders). In addition, to the extent the ALJ did err at all in not fully considering the statement of plaintiff's friend, the undersigned notes the statement indicates no limitations more severe than those assessed by the ALJ. Accordingly, any error was harmless as it does not affect the ALJ's ultimate disability determination.

V.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability

REPORT AND RECOMMENDATION - 17

to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the following residual functional capacity:

> **. . . [T]he claimant has had the residual functional capacity to perform light work, (i.e., lifting and carrying up to 10 pounds frequently and 20 pounds occasionally, and sitting, standing and/or walking each for 6 hours (with usual breaks) out of an 8-hour day, except that she is limited to simple, repetitive type of work and she is limited to brief and superficial contact with the general public.**

Tr. 14 (emphasis in original). The ALJ further stated in his decision that in assessing this RFC, he found "persuasive" the mental health residual functional capacity assessment completed by Ben Kuhner, M.D., who reviewed the evidence in the record and concluded that plaintiff "could perform simple tasks with no limitation in her concentration, persistence or pace, but might be slowed when learning new tasks," and who further opined that "her difficulty absorbing auditory information might interfere with her ability to respond to customer's needs, and therefore, her ability to perform work involving public contact would be restricted." Tr. 20; see also 181.

Plaintiff argues the ALJ erred in placing too much weight on the opinion of Dr. Kuhner, and in not including in his RFC assessment all of the limitations found by Drs. Mayers, Wheeler, Bremer and Downs. But as explained above, the ALJ did not err in his evaluation of the medical evidence from these latter sources. In addition, also as discussed herein, the reliable evidence in the record overall supports the limitations assessed by the ALJ. Accordingly, since Dr. Kuhner's assessed limitations are substantially similar thereto, the ALJ did not err in placing more weight on that physician's opinion here.

REPORT AND RECOMMENDATION - 18

VI. The ALJ's Step Four Determination

In this case, the ALJ found plaintiff to be capable of returning to her past relevant work, as it did not require performance of work-related activities precluded by her residual functional capacity. See Tr. 20. Plaintiff again argues that in light of the ALJ's errors in evaluating both the medical and other evidence in the record, the ALJ's RFC assessment cannot be upheld. Plaintiff has the burden at step four of the disability evaluation process to show that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Once more, given that the ALJ did not err in evaluating the medical and other evidence in the record, plaintiff has not met her burden here.

VII. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). See Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or

REPORT AND RECOMMENDATION - 19

she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Because the ALJ found plaintiff was able to perform her past relevant work, he was not required to go on to step five of the sequential disability evaluation process to determine if she was capable of performing other work existing in significant numbers in the national economy. Plaintiff argues the hypothetical question the ALJ posed to the vocational expert did not include all of her functional limitations. But since the limitations the ALJ included in that hypothetical question was substantially similar to those contained in his assessment of plaintiff's RFC (see Tr. 346), there was no error here. Nor, for the same reason, was the ALJ required to adopt any of the additional limitations plaintiff's argues show she is unable to perform any work.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 14, 2011**, as noted in the caption.

DATED this 28th day of December, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20